Good morning, Your Honors. May it please the Court, Christopher Burke for the appellant. Good morning. I'd like to reserve a few minutes for rebuttal, please. Thank you, Mr. Burke. I'm sorry, how much time did you want to reserve? Excuse me? I didn't hear how much time. Two minutes. Thank you. Thank you. There's three reasons the decision of the Bankruptcy Court should be reversed. First, the plain language of the statute. Second, the debtor, at a minimum, had an interest in the property when he claimed the exemption. And third, 30 days after the 341 meeting, the exemption vests in him, but the property is still property of the state, so the stay is in effect. In terms of the plain language of the statute, 362K says an individual injured by any willful violation of the stay. It doesn't say trustee. In fact, in the Ninth Circuit, we know 362K doesn't apply to the trustee. In the Pace case, the circuit said the trustee is not an individual, and if there's damages from a stay violation, he has to use Section 105. What makes it a stay violation for the bank to write to the trustee and say, we've got the money, tell us what to do with it? Because Wells Fargo has an affirmative duty to take an action. They can't just sit there for eight months and do nothing. Right. They didn't do nothing. They wrote to the trustee and said, give us instructions. Right. And if the trustee has no incentive or no care or no stake in the game, they can do nothing. I agree. If they do nothing, they've got a bigger problem. But if they, instead of doing nothing, if they write a letter to the trustee and say, we're holding the account, give us directions on how to distribute it, how does that violate the stay? Because they then did nothing, and the money was frozen for eight months where the debtors couldn't touch it. Why couldn't they go to the bankruptcy judge and get an order? Because the Ninth Circuit has said the onus isn't on the debtor. I'm not saying who's got the onus. I'm asking why couldn't they go to the bankruptcy judge and say, we need our $17,000 or whatever it is, tell them to release it. Well, eventually we did. We filed a motion for contempt for violating the stay and not turning it over. And the judge said, no, you don't have standing. We appealed. It went to the BAP, and the BAP said we had standing. And it went back down. Did you ask the trustee to communicate to the bank and say these people have an interest in this account, tell them to release it? I did speak with the trustee, and he was resigning and ultimately resigned, and he didn't care. He didn't want to get involved. He didn't want to be part of any lawsuit. I'm not talking about a lawsuit. I'm saying the bank asks, says, we're waiting for instructions from the trustee to release some of the account money. No, we did not go to the trustee. Wouldn't that kind of solve the problem? It could have solved the problem if the trustee did that and if they released it. And if you had asked for it. If we had asked for it. But if we take the situation with a car, it's the same thing. If a car gets repossessed after somebody files a bankruptcy, it's property of the estate. If there's no excess non-exempt equity, the trustee doesn't care about the car. And even if he did, let's say there was equity, the trustee's damage would be to the equity. The debtor's damage is different. The debtor's damage would be cost of tabs, trying to get to work, possibly losing his job. So when we look at it, the question isn't whether there was damage to the property of the estate. There could be, and the trustee would have an interest then. But did somebody's control of that property of the estate injure somebody within the zone of protection? Yes, the debtor. They're holding the money, prohibited the debtor from running his normal banking procedure and cashing checks and the like. Here's the problem. If we were to say two things, when a debtor files, all property of the estate is surrendered to the trustee. 521A4 says that. But the practical effect is it never happens. Why? Everybody would have to get truckloads to take their clothing and furniture and food over to the trustee. The only time a debtor surrenders property is when the trustee specifically asks for it. So the practical effect is debtor files, he uses everything in the normal course, exempt or not. In this case, the debtors were prohibited from using their bank account. The damage didn't stem from injury to the bank account. It stems from the fact they couldn't use the funds. That may be right, but I'm having trouble figuring out how violation of the State order, if that's what happened, is what causes the damage. And that's what the courts below kept struggling with, too. Let's assume for the moment that the turnover provision, 542B, requires the bank to turn over this intangible property as soon as it has notice of the filing of bankruptcy. I understand the bank thinks that's not what 542B means, but let's assume for the moment that that is so. So they violate the State order. That is to say, they're exercising control over property that actually should have been turned over to the State as soon as they knew about the filing. But if they complied with that, what they would have done, they would have handed the money over to the trustee, not to you. Correct. So how are you harmed by the fact that they didn't give it to you because they weren't required to give it to you. They were required to give it to the trustee. Well, two things. Not turning it over is a violation of 542B. I got that. So I'm casting to yourself, but how are you harmed if the obligation is not to turn the money over to you, but to turn it over to the trustee? Because the practical effect is when somebody files bankruptcy, they can use everything. Nothing is turned over to the trustee. And here they prevented they, well, as far as we had no interest, prevented the debt. As I'm reading 542B, the requirement is that it be handed over to the trustee. That is to say it be handed over to the trustee as part of the estate. And they didn't. I know they didn't. And I'm asking you, if the obligation on the bank is to turn it over to the trustee, how does this harm you because they violated their obligation, but the obligation wasn't to hand it over to you? Because we had a greater interest in it than Wells Fargo. Well, I understand that, too. I don't think you're getting the drift of my question. I'm positing an obligation that the bank has violated. They were supposed to hand the money over to the trustee. How does that hurt you because the obligation I'm positing was not to turn the money over to you? Because the debtor still had an interest in that property. Well, of course it does. You claim an exemption. And then I guess if the money was in the hands of the trustee, you would claim the exemption. And at some point, the trustee, if it agreed with the exemption, would hand it over to you. Correct. So then we can go to the end of the exemption time where the debtor claims the exemption, goes to the 341, the 30 days runs, the exemption is now valid, it's still property of the estate under the Supreme Court's Schwab v. Riley case. So it's still, at that point, property of the estate. It's now solely the debtor's under the exemption. So at the latest, the 542 is out of the picture. This is the debtor's money. So why didn't you sue them for breach at that point? Well, we filed our motion. I'm trying to figure out why you have a bankruptcy remedy instead of a remedy in contract. We may have had a conversion issue. At the time, I don't believe the exemption had run when the judge finally made his decision on that. I think it was at the judge made the decision three months or two months after we brought our motion. But we may have had another cause of action. But we're talking about debtors, and in general, debtors, these people happen to do well, but in general, debtors don't have money for their attorneys to run around filing lawsuits when the code provides them a remedy if there's a state violation. So initially, to answer your question, Judge, if the trustee had greater rights and the debtor had no rights, that ended 30 days after the time period to object. Right. The debtor had greater rights then, and it was still property of the estate, and by them holding it, still violated the state. But even before that, what we're saying is the debtor has no rights. But I would posit when the debtor claims the exemption, he has rights at that moment. Why? Because the exemption is presumed valid absent an objection that's sustained. But assume, let's assume that the bank hangs onto the account, which it does. Let's assume that the bank violated its obligation under 542B to hand it over. It's in possession of the money. You claim the exemption. And let's assume that the exemption vests the money in you as soon as the 30 days pass after the 341. Okay. At that point, the money belongs to you. But holding the money at that point, this is what the district court says, isn't a violation of the automatic state anymore because the bank is not holding property of the estate. They're holding money that belongs to you, which brings me to Judge Vibey's question. Well, why don't you have a breach of contract action against the bank? There may have been two causes of action. But the point is the property, it ripens. The exemption might ripen. But it's still property of the estate. I thought if it was exempt, then the property comes out of the estate. No. Well, this court in Gebhardt that dealt with a homestead where the debtor filed and then exempted the property two years later, it went up in value. Then the trustee had an interest in it. This court and the Supreme Court, Swab v. Riley, said you have an interest in the money, but it's still property of the estate even though the exemption ripens. Yeah. I have to say I read those cases more narrowly. I read those cases to say that when there's an interest in a larger piece of property, such as a lien, the title stays with the estate until the final administration is sold off and you get the money. I don't read either our Gebhardt case or the earlier Supreme Court case, the Schwab case, as applying to just tangible funds rather than a sort of a lien or other form of interest. How do you respond to that? The wording of the case says that it remains as property of the estate. I understand it's a different type of asset. And it's also an asset whose cause of action didn't happen until after the bankruptcy was filed. So it's not property of the estate in the sense that the trustee can bring that action. If we were to say 362K doesn't apply in this situation because the trustee didn't do anything, we're basically saying 362K doesn't apply to 362A, 2, 3, and 4 because those involve property. Doesn't the answer to your question turn on how we characterize the Nevada Revised Statute that creates the exemption? Isn't it in your client's interest or at least in your future client's interest to argue that it turns over the asset, that the NRS protects the asset rather than an interest in the asset? Because that would give them an immediate access to the asset itself rather than having to wait until the estate is adjudicated. Well, one of our arguments was that upon claiming the exemption, we're entitled to it. And all prior case law says creditors have to turn it over upon filing. Now, maybe they didn't get into the specific detail of whether it should go to the trustee or the debtor. But in general, if it's a vehicle, it's just assumed it goes over. Did you finish your answer to Judge Bybee's question? I believe so. Okay. I see you're down to a minute and a half and you wanted to reserve two minutes.  Thank you. Good morning. I'm David Minnick of Pillsbury on behalf of Wells Fargo Bank, the appellee. May it please the Court. Your Honors, I take from your questioning a very thoughtful understanding, as you do, of the difference between what is a stay violation and what is actually going on here. Wells Fargo has two particular concerns. First, it doesn't want to have to pay twice. It also doesn't want to have to hand over the money in the account. It likes to hang on to it as long as it can. Your Honor, in fact, the reason this is done this way is because, as you see in the attachment to the letters tonight, is that trustees often give the money quickly out. They don't want to set up another new account and make it happen so that they have to go through an administrative process to say, oh, we'll take this money now, I've got to clear it, get a new check and send it out. They often and usually tell the bank to pay this amount to the debtors. Okay? Absent an order from the trustee to pay to the debtor, why doesn't 542B require the bank immediately upon learning of the filing to transfer those assets to the trustee? Because it says in 542B to pay to or on the order of the trustee. Yeah, that's a good argument until I read Del Mission. Our opinion in Del Mission says the obligation under 542 is to pay without request and immediately. But that, first of all, we owe somebody money. That's what we do. Right? And all we're saying immediately is we used to have to take instruction from the debtor. Now we're saying we only take instruction from you, trustee. It's your bank account for this amount of money that's in there. You tell us what to do. And that is as complete a control as we can give. Yeah. Let me read to you from Del Mission just in case we are in some doubt as to the paragraph I'm interested in. It's on page 1151, the top of the second column. Section 542A, but in the terms of pay upon order, whatever the wording is identical, 11 U.S.C. 542A provides that an entity in possession of estate property shall deliver such property to the trustee. This is a mandatory duty arising upon the filing of the bankruptcy petition. That's 542A because it does say deliver possession of something you're holding. 542B deals with the situation when you have something that you owe to somebody. It's a very different situation. That's why you can't. In Del Mission, the State had required a payment of tax money to be made to them and then held that money for its own benefit while waiting to see how the appeals went, right? And, in fact, in this case, we aren't holding any money for ourselves at all. We're simply saying it's yours. It's property of the estate. We've done everything to tell you. We'll do what you tell us to do. Just tell us. And that continues. I mean, that's we have to be able to. There's no stay violation. In both Abrams, the copyright possession case, and Del Mission, you're holding back for the creditor's benefit something of value, and you're trying to keep it out of the property of the estate. We are completely going the other direction. Wells Fargo acknowledges it is completely property of the estate. We don't assert any claims to it. Once the Milwaukees had filed for the exemption and the 30 days passed, why wasn't Wells Fargo obligated to turn the money over to them at that point? Well, first of all, the burden you're proposing is that Wells Fargo is supposed to be monitoring and determining the moment on which a property might arguably be exempt, right? Because you're saying we have to follow and say, well, when was the first meeting of creditors? Was there a request for an extension that could be continued? Was it continued to a specific date? If not a specific date, did it extend the 30 days? Did a creditor ask for a particular extension of time? And if not, you know, then when did somebody object? Was that objection, how was it dealt with? That is not a role that banks should be imposed to follow, because all they're doing is owing money. And in fact, that's one of the reasons that there is the concept that says property of the estate is, remains property of the estate under the control of the trustee. And then if there is an exemption determined and the property is now available to be taken out of the estate, you either get it out by administering it, by asking the trustee to just pay it out. Or if the trustee won't do what you need, you go for an abandonment motion, which the court can hear on shortened notice and go in and say, there is no longer any interest of the estate in this particular amount of money. Please send it to the debtor. And that can happen quickly. Most often these cases are resolved by the trustee voluntarily doing it. But if they don't, we as a bank have to look to our customer, who at that time is the trustee. And we can't go out and make judgments. In this case alone as to when was there supposed to be a time when we were to release the money, three different courts have chosen three different times for when it came available, right? The first judge said it was immediately removed from the estate and therefore it was no estate because it was not property of the estate. The BAP said no, under Schwab and Gebhardt, you have to wait for the actual removal of the exempt property from the estate by an order of the court or otherwise. That's why there was an inchoate interest. Or then you go to the district court's review and they say, well, we think at the time the objection period expired, then it became automatically exempt and comes out of the estate. So even in this situation, trying to determine, one, is it the kind of exemption that qualifies for Schwab and Gebhardt because it has an interest in that property measured by a dollar value? And in this particular case, the exemption was for one week's wages, 75 percent of what was disposable. And when you heard earlier that these particular people weren't that in trouble here, it's because they claimed $12,000 as their share of 75 percent of one week's wages that was after taxes. So this is the kind of situation where people didn't initially even admit that they had these accounts, right? Then they make a very large claim for what the amount of their particular exemption was. And that's one of the reasons the trustee then took more time in going through its review of the extension, why they had an extension there. But ultimately, the bank isn't going to get involved in that. Once there's no objection, as we know from the Supreme Court, the exemption's there. I want to make sure I understand your answer to Judge Fletcher's question regarding 542. The difference you were making between Section A and Section B. You say Section B applies because this is an account, and Section A would apply to, what, tangible property, like something in a safety deposit box, something of that sort, perhaps? Yes. It could be a number of things. I mean, it's a wide range. But B is specifically addressed to those obligations that are owed or payable to the order of, right? And so those particular types of accounts, which is a deposit account, right? Those are the items that you have an immediate obligation to make available to the trustee. But you can do it either by delivering it to them or by making it say, we will do it on your order, which is what 542B says. And A requires what? Delivery. Will you actually have a car take this stuff over to the trustee or something? Yeah. But that's true. It has the standard of 541A is that you will deliver to the trustee property. But if this is sort of negotiable? What happens is, as was said earlier, is that under the debtor has an obligation to surrender, right, its property, no matter whether it's exempt or not. But surrendering, they do almost constructively, saying here is the schedule of our assets. The trustee can either go out and look at them and say, this is more valuable. I want to decide to take the cost and expense of taking possession of it. They're saying, no, this is probably covered by your exemption. That's fine. Let's leave it as it is. And so then when they sometimes wait until the 341A hearing and say, OK, tell us about your car. I mean, if you look at what's in the record here, they had a Range Rover, a Lexus, a Hummer. And you decide, well, wait, you don't need all that. So then you come back and say, all right, we'll take possession of that. But you do leave them the things that they are not going to be using to sell to cover other things they need to live on, their clothes and so forth. So, yes, that's the reality of how it works. But the obligation on third parties is things to say, hey, deliver it to the trustee. Pay it over to the trustee or give the trustee control of the account and do it on what the trustee orders. So it's a very, you know, the number of things that are going on here, as the court in Zavala said, if you're asking the banks to make a determination of when it is that they're supposed to pay over the money that they've got that they're owed to and that somebody's making a claim to it other than the trustee, and if you're saying that that is something that the banks have to pay attention to. As they estimated in the Eastern District of California in the year 2010, there were approximately 44,000 Chapter 7s with individuals of which the judge estimated 80 percent had involved deposit accounts, and that, as the court said in Zavala, what you're asking is that it's not just a simple motion. The bank has to come in and either seek declaratory relief or an interpleader in order to determine who's entitled to the money. We don't claim it's ours in any way, but to do that, those are adversary proceedings. Those are full-blown court trial answer responses, and you could have over 35,000 cases in the Eastern District of California where if any problems came up because people were claiming it, you've got to go to court with that kind of a litigation  That's why this, this, what you're seeing in this case is an aberration, right? This is a... Is an aberration in what sense, then? Because they're, they're claiming a stay violation because we're complying completely with the code, the code that says this is property of the estate. A stay violation occurs when you take control of something... No, no, I got that. Maybe I'm, maybe I'm asking a different question than prompted by your term, aberration. Is it unusual when there is a claim of, a claim of exemption as to certain money, there's no objection, so the exemption applies, is, is it unusual for the trustee to sit on it and not give any direction to the bank to hand out the money? Because it seems to me the ordinary operational law is once the 30 days has passed, the exemption applies, and they're entitled to the money. And you haven't handed it over because you're saying you're waiting for the order for the trustee. Now, I'm just, this is outside the record. I'm asking you in your experience, is it typical in that circumstance for the trustee to say, eh, forget about it, I'm not going to, I'm not going to tell the bank to do anything? No, I don't think it is necessarily typical, but it, well, I should say this. It is, it, I, and this is off the record. I mean... I'm outside the record. I'm just trying to get a sense of how this works. To be frank with you, Wells Fargo has an entire bankruptcy group that's set up trying to monitor these things, and they try and calendar them to see, because a lot of times the trustees don't respond, right, and they don't do it on time. And so we at least try and say, okay, the time has come by where the time may have passed for an exemption objection. Can we go back, try and call, try and contact the trustee again and do things like  We try and, you know, move it out. So it, the aberration here is that... Can the debtor light a fire under him? Can the debtor go to court? That's exactly what happens. In our letter to the debtor, we say, you may be able to speed this matter up by talking to the trustee. And that's the, I mean, if there's really a problem, the bank is just somebody that owes money here. The people involved are the trustee and the debtor. The trustee's looking for the, for the rights of everybody, the creditors and so forth. The debtor wants money back for itself, right? Why wouldn't it be easier from the standpoint of the bank simply to write a check to the debtor as soon as, excuse me, a check to the trustee as soon as the filing takes place? I mean, then you're done. You don't have to worry about keeping track of anything. You just say, here you go, trustee, it's all yours, it's property, estate, I recognize that, and I'm done. Why didn't you do that? Well, first of all, it could be done that way. Yeah, so I'm asking why don't you do it that way? Because the trustees didn't want it that way. The trustees don't want to take all that burden on themselves right off the bat to get that money, and it's going to go out fast. And that's the vast majority of these cases, just things happen. It's not, look, we only do this for $5,000 and up, right? Because we're concerned that if we let money go out the door after we learn of a bankruptcy with 6,000 branches and auto centers and mortgage centers, that we're going to learn of a bankruptcy somewhere, and the money's going to go out the checking account before we can stop it, right? So we have to set up a system that helps stop all this and get control of it and say, okay, now look, trustee, you've got it better. If you want it, go talk to the trustee and get us to speed up. We'll do whatever the trustee tells us, or if they go get a court order and tell us the trustee's not moving, just go in. I've had a number of these cases since the Milwaukee BAP case, and courts moved quickly when there was a real reason to get them money to give immediate relief under a shortened time position. But it was never at the obligation or burden of the bank. So I appreciate that. I mean, think about smaller banks. Think about what you're going to write on this opinion. The BAP opinion didn't bind anybody, right? This is an important statement somehow you make here, because if you put on the burden for the small town bank that they've got to monitor when an exemption is available, because if they're a day late on getting that money out after it became exempt, that they're somehow liable in the bankruptcy court. Whereas this is, I think the question was asked earlier, and rightfully so, there is no bankruptcy cause of action here. If somebody wants to claim there's a contract cause of action, fine, our account agreement deals with that. But there is no cause of action for violation of the state. Mr. Minnick, thank you. Mr. Burke? I'm having a hard time figuring out what the bank did wrong here. Can you summarize it in 25 words or less? I'll try, Your Honor. First of all, if the Court wants to remand so we can amend our lawsuit to make it a conversion action, the Court can do that, too. Well, I suppose we don't want to do that. I suppose we just want to rule on your appeal. Basically, to answer Judge Vibey, which earlier asked about, isn't it better to say you exempt a certain amount? What Suave V. Riley says is, if you exempt a specific dollar amount and there's an amount greater than that, as here, it's still property of the estate. So at the latest, we have standing under 360. That's going to turn on the nature of the exemption, which is going to turn on, that's the question I asked you earlier, doesn't that turn on the NRS? Because this is a matter of, in part, this is governed by state law. It's not exclusively bankruptcy law. Right. So under the NRS, 75 percent of wages are exempt. What counsel does, fails to state or maybe doesn't know, he's not from Nevada, but there's a Nevada Supreme Court case, Christensen, which says whatever money you have in the bank, if it came from wages, 75 percent is exempt, even though the statute talks about one week. So the 75 percent is protected and should have been turned over 30 days after. Now, to say, oh, the bank, we don't want the bank to have to monitor, well, obviously they're monitoring it. They're sending letters out. What's your answer to Mr. Minnick's point in answer to Judge Fletcher's question that they've done everything they're required to do when they send a letter saying we'll turn over the money to the trustee at their order under 542B, under 542? They should have turned it over, and they never did. But it says they have the option of turning it over or saying we'll dispose of it on your order, that they say the statute authorizes them to do that. What's your answer to that? That it requires them to take the act whether they hear from the trustee or not. Otherwise, they've committed the perfect crime. Yeah, but that's a tough one. That's a tough obligation to put on the bank. I'm not always sympathetic to banks, but on this one, it does seem to me it's rather hard on the bank to have to make what could be a fairly complicated legal determination and with respect often to very small amounts of money. That's a pretty big burden, and the trustee administering the State, I think, is in need to understand whether the exemption is properly claimed, whether, you know, and so on. But the only bank doing it is Wells Fargo. Obviously, other banks aren't being hurt by it or didn't enact this policy. Wells Fargo chose to do that. Now, this is, again, outside the record. I'm trying to get a sense of the practice. Are you representing to me that most banks, upon the learning of the filing of the bankruptcy, will just write a check for the amount of the account to the trustee? No. When you say Wells Fargo is the only bank that's doing this, what is it that they're the only bank that's doing? I've represented about 10,000 debtors. I can tell you no other bank is holding the funds and sending letters to the trustee. They're letting the debtors use the money. But that creates the possibilities for double liability then on the bank, doesn't it? No, because... If it's the money of the estate. No, because what happens is if the debtor spends the money, it's the debtor who has to pay it back or loses discharge. We're really getting to stuff outside the record about what other banks do in other cases, but let me see if there are any other questions. No. Okay. Thank you, gentlemen. The case just argued is submitted. We'll stand and recess for this session. Darrell, thank you for your work today and this week.
judges: Silverman, Fletcher, Bybee